UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DERALYN ANN KNAPPENBERGER, <br> Plaintiff, <br> v. <br> CAROLYN W. COLVIN, <br> Defendant. | Case No. 15-cv-02324-NJV <br><br> **ORDER ON MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. No. 19 & 22 |

**INTRODUCTION**

Plaintiff, Deralyn Ann Knappenberger, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 7 & 11). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF RELEVANT EVIDENCE**

Plaintiff injured her right knee in 2002, and had an MRI that showed possible disruption of the ACL and tear of the meniscus, and surgery in 2005 by orthopedic surgeon Robert Lyell, M.D.. AR. 741. Plaintiff's left knee became problematic in 2006 due to an old injury to the meniscus and MCL. She was given an injection, immobilized, and put on crutches. Arthroscopic surgery was performed in April 2006. AR. 374, 742. In March 2007, Dr. Mandell determined Plaintiff was "permanent and stationary" and found her left and right knee limitations precluded "heavy lifting, climbing, walking over uneven ground, squatting, kneeling, crouching, crawling, pivoting and prolonged weight bearing." AR. 738.

Plaintiff reinjured her left knee in September 2007. AR 754-755. An x-ray of September 2007 noted bone fragments within the intercondylar notch. AR. 753. The hospital note from St. Joseph Hospital by orthopedic surgeon Robert Koch, M.D., on September 8, 2008, documents additional left knee arthroscopy and meniscectomy in 2004, and an ACL reconstruction in 2007. AR. 761-764. Dr. Koch diagnosed moderate instability post unsuccessful ACL reconstruction. He advised conservative treatment. AR. 758-759.

The North Country Clinic office note of February 18, 2011, reports that Plaintiff had significant right knee pain and was using crutches to walk as well as a brace. AR. 417. In December 2012, Plaintiff reported she was using a knee brace. AR. 704. An x-ray on December 9, 2012, showed mild hypertrophic changes at the medial and lateral joint compartments. AR. 766. On December 19, 2012, Plaintiff sought and received a letter from a physician's assistant

stating that she could work, but would be unable to stand, twist, or squat for long periods due to left knee pain. AR. 703.

On February 13, 2013, Dr. Lyell diagnosed medial joint line tenderness/osteoarthritis, recommended an MRI if glucosamine did not work, and to consider injections and even further arthroscopy. AR. 768.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR. 22-32.

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR. 24.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: bipolar disorder, attention deficit disorder (ADD), insomnia, anxiety disorder, and post-traumatic stress disorder (PTSD). The ALJ also considered,

but rejected Plaintiff's claim that she suffered bilateral knee pain.  AR. 24-25.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).  The claimant bears the burden of showing her impairments meet or equal an impairment in the listing.  *Id*.  If the claimant is successful, a disability is presumed and benefits are awarded.  *Id*.  If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id*. § 416.920(a)(4)(iv), (e).  Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  AR. 26.  Next, the ALJ determined that Plaintiff retained the RFC "to perform a full range of work at all evectional levels" but with several nonexertional limitations.  AR. 27.

At Step Four, the ALJ determined that Plaintiff was not capable of performing her past relevant work.  AR. 30.  At Step Five, after considering the Plaintiff's age, education, work experience, and RFC, and after consulting with a VE and applying the Medical-Vocational Rules, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR. 31.  Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period.  AR. 32.

**ISSUESS PRESENTED**

Plaintiff presents three issues for this court's consideration:  (1) whether the "ALJ committed harmful legal error in ruling the Plaintiff's bilateral knee condition was non-severe"; whether the "ALJ committed harmful legal error in rejecting the treating physician's opinion";  (3) and whether the "ALJ committed harmful legal error in failing to fully consider Plaintiff's physical impairments and to what degree Plaintiff's physical impairments affected her functional ability."  Pl.'s Br. (Doc. 19) at 3-4.  Plaintiff's first challenge is to the ALJ's Step Two determination.  "In light of the remand required by the ALJ's error at step two, the court need not address [P]laintiff's remaining claims."  *Haverlock v. Colvin*, No. 2:12-CV-2393 DAD, 2014 WL 670202, at *5 (E.D. Cal. Feb. 20, 2014) (citing *Sanchez v. Apfel*, 85 F.Supp.2d 986, 993 n. 10 (C.D. Cal. 2000).

**DISCUSSION**

Plaintiff alleges that the ALJ erred by not properly evaluating her allegations of bilateral knee pain, including failing to find the condition as severe, and then failing to account for it in formulating the RFC. Defendant argues that the ALJ properly evaluated Plaintiff's knee condition and that any error in the decision is harmless.

At Step Two, the ALJ considered whether Plaintiff's complaints of bilateral knee pain and limitations met the definition of a "severe" impairment under 20 C.F.R. §§ 404.1521, 416.921. In determining that it did not, the ALJ pointed to the "mainly remote records" spanning from 2003 to 2009. AR. 25. The ALJ noted that those dates preceded the relevant time period, which began December 31, 2010. The ALJ discussed Dr. Lyell's opinion from 2013, but stated that "what is legible" notes only mild left knee osteoarthritis. *Id*. The ALJ found that the records from 2010 through the present show very little treatment and minimal, if any, limitations. *Id*. The ALJ recited Plaintiff's history of knee surgery and complaints of pain in 2008 and 2009, followed by the x-ray in 2012 that showed status post ACL repair. The decision also discussed Plaintiff's request from her doctor in 2011 for pain medications and that she was ambulating on crutches. The ALJ noted the medical records of 2012 that showed Plaintiff suffered intermittent pain in her knee and her use of a brace. The ALJ then pointed to the examination of 2012 in which Plaintiff noted "she was able to run, skip, jump, and hop without difficulty" and concluded that the bilateral knee pain was non-severe as defined by the Social Security Act. AR. 26.

At Step Two, a "severe" impairment or combination of impairments significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c). "Where an adjudicator is 'unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end [at step two].'" *Zazai v. Colvin*, No. 15-CV-03591, 2016 WL 2606659, at *8 (N.D. Cal. May 6, 2016) (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims.'" *Id*.

The Commissioner argues that the ALJ's determination was correct here and that the ALJ properly found that Plaintiff's last knee surgery was three years before the alleged onset date and

that Plaintiff waited until the "11th hour" to allege knee problems.  However, Dr. Lyell opined in 2013, within the onset date, that injections or arthroscopic surgery should be considered.  AR. 768.  He diagnosed Plaintiff with medical joint tenderness/osteoarthritis.  The ALJ dismissed this notation by commenting that "what is legible" in Dr. Lyell's handwritten notes, is merely a diagnosis of "mild osteoarthritis"  AR. 25.  The court finds that interpretation of Dr. Lyell's note to be without support.  To the extent the ALJ needed clarification of the doctor's opinion, the ALJ certainly could have sought it.  Indeed, Plaintiff provided such information in the post-hearing briefing.  *See* AR. 310, 313.  The ALJ appeared to simply ignore this.  The note's importance is explained by Plaintiff:

> To complete the summation of the handwritten note (again assisted by the doctor's staff), seven months prior to the hearing, the orthopedic surgeon found a history of six to seven years of pain, positive laxity, positive medial joint line tenderness, a diagnosis of osteoarthritis and a recommendation for a trial period of glucosamine and chondroitin after which she would be considered for steroid injections for pain as well as additional arthroscopic surgery.  AR. 768.

Pl.'s Mot. (Doc. 19) at 10.[1]  Further, that the issue of Plaintiff's knees may not have been raised until the hearing before the ALJ is of no consequence.  The ALJ considered the condition and was under an obligation to do so properly.

The ALJ dismissed the notations in the medical record from 2012 that Plaintiff suffered knee pain and for which she wore a brace based on the separate 2012 examination notation that Plaintiff "was able to run, skip, jump, and hop without difficulty."  AR. 26.  The problem is that the second notation was made by a nurse during a county mental health services screening.  AR. 535.  Thus, the ALJ rejected Plaintiff's complaints of swelling in her knees for which she was treating with a combination of ice, a brace, and pain medication as reported to her primary care person, because of a screening form for mental health services.

---

[1] The Commissioner argues that the post hearing briefing "alleging discussions with medical staff does not constitute competent evidence."  Def.'s Mot. (Doc. 22) p.6 n.3.  Whether or not that is true, the ALJ noted the illegibility of the handwriting and received briefing on it.  If she was unsatisfied with the competency of the evidence, then considering its import, she was obliged to develop the record.  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (finding the "ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate" at Step Two.).

1 Plaintiff argues that the history of knee surgery and complaints of knee pain and limitations meets the *de minimus* standard required for a finding of "severe" at Step Two. The Commissioner does not argue that Plaintiff failed to meet the standard. Indeed, the Commissioner does not include any reference to the legal standard of the Step Two determination. Instead, the Commissioner reiterates the ALJ's findings and as to Dr. Lyell's opinion, argues that "these findings do not suggest that Plaintiff's condition resulted in knee instability or other significant limitations." Def.'s Mot (Doc. 22) at 6. The court does not agree. Considering the history of knee surgery, the medical records from before the alleged onset date, the records within the alleged onset date, especially that of Dr. Lyell, the court finds that the medical record "includes evidence of problems sufficient to pass the *de minimis* threshold of step two." *Webb,* 433 F.3d at 687. "Moreover, on the record that does exist, the ALJ's reasons for rejecting [Plaintiff's] complaints at step two are not substantial enough to meet the 'clear and convincing' standard." *Id*. This is true as it applies to the ALJ's treatment of Dr. Lyell's opinion and the ALJ's reliance on the mental health screening form to reject Plaintiff's complaints of pain and swelling in 2012.

**REMAND FOR FURTHER PROCEEDINGS**

Plaintiff seeks a reversal with an award of benefits, or in the alternative, a remand for further proceedings. A reversal with award is appropriate where "where it is clear from the record that a claimant is entitled to benefits" and "the record has been developed fully and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Here it is not clear that Plaintiff would be entitled to benefits and the record is not fully developed because the error occurred at Step Two.

**CONCLUSION**

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's motion for summary judgment. The court hereby REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

7

**IT IS SO ORDERED**.

Dated: May 20, 2016

_____
NANDOR J. VADAS
United States Magistrate Judge